FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 JAN 21  AM 8:49

U.S. DISTRICT COURT
N.D. OF ALABAMA

TAMARA JACKSON,                    }
                                   }
        Plaintiff,                 }
                                   }     CIVIL ACTION NO.
v.                                 }
                                   }     98-AR-2667-S
DIXIE BULK BAG, et al.,            }
                                   }
        Defendants.                }
                                   }

**ENTERED**

JAN 21 2000

### MEMORANDUM OPINION

Before the court is a motion for summary judgment filed by
defendants, Dixie Bulk Bag ("Dixie") and Paul Horsley ("Horsley").
The motion seeks judgment as a matter of law on the claims by
plaintiff, Tamara Jackson ("Jackson"), that defendants violated
42 U.S.C. §§ 2000e *et seq.*, Title VII of the Civil Rights Act of
1964, *as amended* ("Title VII"), including both "*quid pro quo*" and
"hostile environment" sexual harassment, as well as on Jackson's
Title VII claims of retaliation, and constructive discharge.
Lastly, the motion seeks judgment as a matter of law on Jackson's
supplemental state law claims of invasion of privacy, and
negligent/wanton training, retention and supervision.   For the
reasons set forth below, defendants' motion is due to be denied in

1

part and granted in part.

In addition to defendants' motion for summary judgment, the court has before it two motions to strike, one from each side of the controversy. Dixie's motion to strike Jackson's affidavit is due to be denied, and Jackson's motion to strike the two affidavits, filed by Dixie after Jackson's reply brief was filed, is due to be granted.

## Background

Jackson began working for Dixie in November of 1996 as an inspector. Horsley was her supervisor. After three months as an inspector Jackson began operating sewing machines as a hemmer. She continued in that position for the remainder of her employment with Dixie. In February of 1997, Horsley was promoted to Plant Production Supervisor with the authority to discipline and terminate employees. Jackson quit on May 8, 1998.

While the parties are in agreement with respect to the background facts as stated above, they disagree on virtually everything else. Jackson claims that she was sexually harassed and propositioned relentlessly by Horsley, especially after he was in a position to discipline and terminate the plant employees. Jackson further claims that she was driven out of her job by

2

Horsley's unfair punishments and by his intolerable attitude that resulted from her rejection of his advances. Jackson also asserts that Dixie had no sexual harassment policy, no training, and failed to remedy incidents of harassment known to the company.

In contrast, Dixie and Horsley claim that there was no harassment of any kind. They further claim that Jackson had a personality conflict with Horsley, that she overreacted to situations, seeing "punishment" where none was intended, and that she quit based on just such a misunderstanding and overreaction. Defendants assert that Jackson's sexual harassment lawsuit is based entirely on fabrications, put forth solely for the purpose of exacting revenge. Dixie further claims that its sexual harassment training procedures, while informal, are effective and entirely appropriate for a small, family run business. Moreover, Dixie claims, it never failed to remedy any incidents of sexual harassment because there were none; certainly, at least, none that were ever brought to its attention.

## Discussion

### I. Sexual Harassment

a. Hostile Environment

In *Mendoza v. Borden, Inc.*, the Eleventh Circuit recently

3

restated the elements of a hostile environment harassment claim:

> To establish a hostile-environment sexual-harassment
> claim under Title VII based on harassment by a
> supervisor, an employee must show: (1) that he or she
> belongs to a protected group; (2) that the employee has
> been subject to unwelcome sexual harassment, such as
> sexual advances, requests for sexual favors, and other
> conduct of a sexual nature; (3) that the harassment must
> have been based on the sex of the employee; (4) that the
> harassment was sufficiently severe or pervasive to alter
> the terms and conditions of employment and create a
> discriminatorily abusive working environment; and (5) a
> basis for holding the employer liable. *Henson,* 682 F.2d
> at 903-05.

\* \* \*

> Establishing that harassing conduct was sufficiently
> severe or pervasive to alter an employee's terms or
> conditions of employment includes a subjective and an
> objective component. *Harris*, 510 U.S. at 21-22, 114 S.Ct.
> 367. The employee must "subjectively perceive" the
> harassment as sufficiently severe and pervasive to alter
> the terms or conditions of employment, and this
> subjective perception must be objectively reasonable. *Id*.
> The environment must be one that "a reasonable person
> would find hostile or abusive" and that "the victim ...
> subjectively perceive[s] ... to be abusive." *Id*. at 21,
> 114 S.Ct. 367. Furthermore, "the objective severity of
> harassment should be judged from the perspective of a
> reasonable person in the plaintiff's position,
> considering 'all the circumstances.'" *Oncale,* 118 S.Ct.
> at 1003 (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367).
> The objective component of this analysis is somewhat fact
> intensive. Nevertheless, the Supreme Court and this
> Court have identified the following four factors that
> should be considered in determining whether harassment
> objectively altered an employee's terms or conditions of
> employment: (1) the frequency of the conduct; (2) the
> severity of the conduct; (3) whether the conduct is
> physically threatening or humiliating, or a mere

4

offensive utterance; and (4) whether the conduct
unreasonably interferes with the employee's job
performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647
(11th Cir.1997) (citing Harris, 510 U.S. at 23, 114 S.Ct.
367). The courts should examine the conduct in context,
not as isolated acts, and determine under the totality of
the circumstances whether the harassing conduct is
sufficiently severe or pervasive to alter the terms or
conditions of the plaintiff's employment and create a
hostile or abusive working environment. *Id.; see Harris*,
510 U.S. at 23, 114 S.Ct. 367.

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245-46 (11th Cir. 1999)
(en banc).

Applying the guidelines it set forth, the *en banc Mendoza*

court found that the conduct Mendoza alleged did not rise to a

level of severity or pervasiveness such that it altered the terms

and conditions of her employment. The *Mendoza* court reached that

conclusion after finding that Mendoza presented only the following

four examples of harassing conduct:

(1)one instance in which [defendant] said to Mendoza "I'm
getting fired up"; (2) one occasion in which [defendant]
rubbed his hip against Mendoza's hip while touching her
shoulder and smiling; (3) two instances in which
[defendant] made a sniffing sound while looking at
Mendoza's groin area and one instance of sniffing without
looking at her groin; and (4)[defendant's] "constant"
following and staring at Mendoza in a "very obvious
fashion."

*Id.*, at 1247.

Here, although a close call on these facts, this court concludes

that the Jackson does raise genuine issues of fact as to the

5

objective and subjective severity and pervasiveness of harassment.

With respect to the "subjective severity" of the harassment, although this factor is often conceded due to the difficulty of contesting the sincerity of another's claimed subjective perceptions, defendants do contest Jackson's claim that she was subjectively offended by Horsley's conduct. Defendants argue here that "[t]hough the plaintiff would present herself as beyond reproach, [we] will defend on the theory that the alleged behavior was not subjectively offensive to Tamara Jackson." In support of this argument, defendants offer the affidavits of two acquaintances of Jackson who were also employees of Dixie. In these affidavits, the acquaintances claim that when giving Jackson a ride home, Jackson indicated she was having sex with someone besides her husband, and that her husband did not mind. Furthermore, the acquaintances claim, Jackson even requested that one of them participate in this practice and agree to be a sex partner for her husband.

Defendants' argument appears to boil down to the assertion that because Jackson is so morally suspect, she could not possibly have been offended by continuous unwanted solicitations for sex by her supervisor at work. This argument strikes this court as an anachronism. It may work on jurors who would acquit a man charged

6

with rape based on evidence that the victim had previously slept with several men and wore short skirts.  Notably lacking from defendants' brief on this point is a citation to a single case in which a court has found that a person's private sexual history renders him or her incapable **as a matter of law** of experiencing subjective offense at sexual harassment in the workplace.[1] Whatever things Jackson did on her own time, of her own free will, Jackson still has a right to be believed when she claims subjective offense at continuous unwanted demands for sex by her supervisor at work.  Assuming, as the court must at this stage, that these sexual demands actually occurred, the court must leave for jury determination Jackson's claim that she was subjectively offended by them.[2]

---

[1] If anything, courts have said otherwise: "[W]omen's use of foul language or sexual innuendo in a consensual setting does not waive their 'legal protections against unwelcome harassment.' *McGregor II*, 989 F.2d at 963 (quoting *Swentek v. US AIR, Inc*., 830 F.2d 552, 557 (4th Cir.1987) (quoting *Katz*, 709 F.2d at 254 n. 3)). That women say 'fuck' at work does not imply that they are inviting any and every form of sexual harassment." *See McGregor II,* 989 F.2d at 963-64.  *Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 883 (D. Minn. 1993).

[2] This court also finds that the two affidavits discussed above were not timely filed, and thus the court will grant plaintiff's motion to strike them on that ground.  These affidavits were submitted as part of the defendants' response to plaintiff's opposition to defendants' motion for summary judgment.  As such, they were submitted at a time when plaintiff was unable to respond.  As the District Court for the Middle District of Georgia put it in *MCI Telecommunications*: "Where a party does raise new grounds in its reply, the Court may either strike the new grounds or permit the non-moving party additional time to respond to the new argument." *International Telecommunications Exchange Corp. v. MCI Telecommunications Corp.*, 892 F.Supp. 1520, 1531 (M.D. Ga. 1995).  Here, because the affidavits are not only untimely but

Next, Jackson must demonstrate that the conduct in question was objectively offensive. In other words, Jackson must show that a reasonable person in her position would have found the environment severely hostile or abusive. *Faragher v. City of Boca Raton*, 524 U.S. 775, ____, 118 S.Ct. 2275, 2283 (1998). The *Mendoza* court listed the factors courts should consider when looking at the question of objective severity of the harassment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Mendoza*, 195 F.3d at 1245-46.

(1) Frequency

In her deposition and in her brief in opposition to defendant's motion for summary judgment, Jackson alleges that Horsley "constantly" and "continuously" made sexually-oriented comments and remarks. Although defendants have offered the affidavits of a number of employees who say they never heard these comments and remarks, these affidavits cannot cancel out Jackson's

_____

only tend to prove the existence of a factual dispute, this court elects to strike the affidavits as opposed to granting Jackson additional time to respond.

8

testimony. The persons making these affidavits simply state that they never heard the comments. They do not, and could not, state that the comments were never made. Moreover, Jackson, in response, offers the affidavit of another fellow employee, Karen Willis, who alleges that Horsley "constantly made sexual comments to me." Based on the above, the court finds that the frequency factor weighs in Jackson's favor at summary judgment stage.

(2) Severity

In addition to the "constant" sexually-oriented comments and remarks described above, Jackson also alleges that on at least three occasions, Horsley outright propositioned Jackson to meet him outside of work and have sex with him. Jackson also alleges that these propositions were coupled with comments from Horsley like, "Your job is on the line," "Nothing you can say or do can get me in trouble, I am always right," "When it comes to you and me, I am always right." In light of the fact that Horsley had authority to discipline and terminate, and in light of Jackson's allegations that Horsley used that authority to threaten her, the court finds that Jackson has alleged conduct severe enough to allow her to bring the matter to a jury.

(3) Physical threat, or mere offensive utterance.

Jackson alleges several instances of unwanted touching when

9

Horsley put his hands on her shoulders in a "sensual" manner, but as a whole, she does not allege a physically threatening environment.

(4) Unreasonable interference with job performance.

Jackson alleges that she was so upset by Horsley's actions that she was eventually forced to quit. In fact, she claims constructive discharge as an allied cause of action. The court finds that Jackson has made out a *prima facie* case of unreasonable interference with job performance. The court finds that Jackson has raised genuine issues of fact with respect to subjective and objective severity and pervasiveness of the harassment.

Next, Jackson must demonstrate "a basis for holding the employer liable."[3] *Mendoza*, 195 F.3d at 1245-46. In *Faragher*, the Supreme Court set forth the rule on employer liability for the acts of the supervisor:[4]

---

[3] It is the employer, not the individual supervisor, who is properly to be held accountable for any violations of Title VII. *Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995).

[4] This court is concerned by the fact that defendants in this case cite as controlling precedent the earlier, overruled *Faragher v. City of Boca Raton*, 111 F.3d 1530 (11th Cir. 1997). Defendants cite the Eleventh Circuit's 1997 *Faragher* decision for the proposition that an employer can **only** be held liable for a supervisor's harassment **if the employer knew of the harassment and failed to remedy the situation.** Defendants' attorneys must be aware of the Supreme Court's later *Faragher* decision, among the most well-known sexual harassment/Title VII cases of the last decade, which expressly overruled that very holding. The Supreme Court replaced the Eleventh Circuit's standard with the one quoted above in the main body of this

10

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule. Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 118 S.Ct. at 2292-93.

Here, Horsley was the supervisor with immediate authority over Jackson. There is a questions whether he constructively discharged Jackson and, if he did, whether this constitutes a tangible employment action. If there was been a tangible employment action, Dixie would be strictly liable. This possibility will be considered during discussion of *quid pro quo* harassment below. Assuming, *arguendo,* that no tangible employment action was taken against Jackson,[5] Dixie can still be liable, but it has available

---

opinion, in which **the employer is vicariously liable, <u>even without knowledge</u>, unless it can satisfy <u>both</u> elements of the affirmative defense**. This issue goes to the very heart of whether or not plaintiff's claim will survive summary judgment. This court does not understand the citing of overruled  precedent on a dispositive matter in this case.

[5] According to the Supreme Court, a "tangible employment action" for purposes of the vicarious liability issue means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, ___,

11

to it an affirmative defense.  Dixie can escape liability if it can
establish **both** elements of the *Faragher* affirmative defense.

(1) Reasonable care to prevent and correct harassment

Dixie claims that it did exercise reasonable care, pointing to
the Supreme Court's comment in *Faragher* that "an antiharassment
policy with complaint procedure is not necessary in every instance
as a matter of law."  All that really is required, the *Faragher*
court held, is a "policy suitable to the employment circumstances."
*Id.* at 2293.  Dixie claims that because it has an open-door policy
for the expression of on-the-job complaints, that this constitutes
an effective and entirely appropriate antiharassment policy
considering its circumstances as a small, family-run company.
Dixie makes this claim notwithstanding the fact that it appears to
concede that it never specifically discussed sexual harassment in
the workplace with its employees at any time, formally or
informally.  Jackson, on the other hand, claims that because Dixie
had no antiharassment policy at all, it cannot claim to have taken
reasonable steps to prevent harassing behavior.

While this court agrees with Dixie that *Faragher* leaves open

---

118 S.Ct. 2257, 2268 (1998) (citations omitted). In most cases, a tangible employment action
"inflicts direct economic harm." *Id.* at ___, 118 S.Ct. at 2269.

the possibility that an informal antiharassment policy may be sufficient, this court also finds that the sufficiency of Dixie's policy is a fact question for a jury to decide. If Jackson can prove that Dixie had no antiharassment policy, or that its claimed "informal" policy was not adequate, then Jackson will succeed in proving that Dixie did not take "reasonable steps to prevent harassment." Conversely, if Dixie can prove that its informal policy was adequate, it may be able to avail itself of the *Faragher* affirmative defense and avoid liability.

The court need not reach element two of the *Faragher* defense or any the other areas of contention between the parties on this claim of hostile environment harassment. The court finds that Jackson has raised genuine issues of material fact with respect to both (1) the harassment claim itself: whether Horsley's alleged harassment was severe enough to alter the terms and conditions of her employment; and, (2) the vicarious liability: whether Dixie's informal policy constitutes "reasonable steps to prevent harassment" under the circumstances. Accordingly, defendant's motion for summary judgment on Jackson's claim of hostile environment harassment is due to be denied.

b. *Quid Pro Quo* Sexual Harassment

13

To establish a *prima facie* case of *quid pro quo* sexual harassment, the employee must prove: (1) that the employee belongs to a protected group, (2) that the employee was subject to unwelcome sexual harassment, (3) that the harassment complained of was based on sex, and (4) that the employee's reaction to the harassment complained of affected tangible aspects of the employee's compensation, or terms, conditions or privileges of employment. *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1564 (11th Cir. 1987).

Jackson is female and thus belongs to a protected group. The parties disagree over elements two and three, whether there was unwanted sexual harassment, and whether the harassment was based on sex.[6] As discussed above, however, the court accepts Jackson's

---

[6] Defendants contend that Jackson claims no sexual harassment on the very day she left Dixie, and that this demonstrates that her stated reason for leaving is false. Defendants claim that the reason Jackson left was because she was mad at her supervisor, and not, as she claims, because of sexual harassment. First, this court disagrees with defendants' underlying premise on this point, that sexual harassment could not possibly have been Jackson's reason for leaving unless harassment occurred the very day she left. Second, and more importantly, this court believes that defendants misunderstand the definition of sexual harassment. This court agrees with courts that are beginning to recognize that "[s]exual harassment has less to do with sex than with power." *Fuller v. City of Oakland*, No. C-89-0116MHP, 1992 U.S. Dist. LEXIS 2546 at 30 (N.D. Cal. Feb. 10, 1992). As another court put it: "Title VII does not require that sexual harassment be motivated by attraction, only that it be 'because of sex'; indeed, harassment, like other forms of victimization, is often motivated by issues of power and control on the part of the harasser." *Tanner v. Prima Donna Resorts, Inc.*, 919 F.Supp. 351, 355 (D. Nev.1996); *see also Retherford v. AT & T Communications of Mountain States, Inc.*, 844 P.2d 949, 978 (Utah 1992) ("harassment has far more to do with the abusive exercise of one person's power over another than it does with sex."); accord*, Kanzler v. Renner*, 937 P.2d 1337, 1342 (Wyo. 1997). Here,

allegations as true for the purposes of Rule 56 consideration, and finds that there is sufficient evidence of unwanted harassment and that the harassment was based on Jackson's sex.

The key question in the present matter relates to element number four, namely, whether Horsley's response to Jackson's rejection of his advances "tangibly affected terms or conditions of her employment." Jackson, in her brief, sets forth three examples of such tangible action. She claims that Horsley, once his demands for sex were rebuffed, (1) refused to fix her sewing machine, (2) required her to sweep the floor, and finally, (3) Horsley's treatment became so unbearable that she had no choice but to resign. Jackson's argument seems oddly to de-emphasize the only real claim she can make that a tangible employment action occurred. Surely, Jackson does not intend to seek money damages because she was made to sweep the floor. On the other hand, if Jackson can prove that Horsley's treatment became "so unbearable that she had no choice but to resign," then Jackson would be stating a claim for

---

Jackson's stated reason for leaving, given in her deposition, relates to allegations of the abusive exercise of power on Horsley's part: Q: "Were you primarily mad because [Horsley] made you sweep and didn't put you on another machine?" A: "No, I was mad primarily because no matter what we would do or say, this man was always right. And that to me, was not right." [Jackson dep. p. 195]. In the overall context of Jackson's allegations, this can constitute "sexual harassment" just as much as Horsley's alleged propositions. Furthermore, as an aside, it did happen the "very day" she left.

"constructive discharge," which courts do recognize as a "tangible

employment action." The District Court for the Middle District of

Georgia recently so held:

> A normal voluntary resignation is not a "tangible
> employment action" within the meaning of
> *Ellerth/Faragher*. *Hyman v. Atlantic Medical Center*, 1998
> WL 135249 at 10 (D.N.J.1998)(unpublished). However, if
> the employer made working conditions so intolerable that
> the employee was "forced" to resign, courts can recognize
> that a constructive discharge occurred, and that is a
> tangible employment action. *See McCoy v. Macon Water
> Authority*, 966 F.Supp. 1209, 1221 (M.D. Ga.1997).

*Jones v. USA Petroleum Corp.*, 20 F.Supp.2d 1379, 1383 (S.D. Ga.

1998).

Thus, the key question with respect to Jackson's claim for *quid pro

quo* harassment is whether she has raised a genuine issue of fact as

to her allegation that she was constructively discharged. The

court will next consider that question.

A claim for constructive discharge requires the employee to

demonstrate that the work environment and conditions of employment

were so unbearable that a reasonable person in plaintiff's position

would be compelled to resign. *Virgo v. Riviera Beach Associates,

Ltd.*, 30 F.3d 1350, 1363 (11th Cir. 1994). The rule is easy to

articulate but difficult to apply. This court must attempt to

distill a three-year history of interaction between Horsley and

Jackson, with all its nuances and misunderstandings, and determine

16

whether a "reasonable person" in Jackson's position would be "compelled to resign" under those conditions. Such fact-intensive inquiry is not often appropriate for summary judgment.

Jackson makes the following claims in her affidavit:[7] She states that Horsley "constantly" made lewd sexual comments to her; that Horsley's comments continued to increase in frequency and degree throughout her time at Dixie, especially after he was promoted to a position of authority; that Horsley eventually started expressly asking Jackson to have sex with him; that Horsley placed his hands on her shoulders in a sensual manner numerous times; and finally, when Horsley was ultimately convinced that Jackson was rejecting his advances, that he would yell and make comments like "your job is on the line."

---

[7] With respect to this affidavit, defendants filed a motion to strike Jackson's affidavit on the grounds that it is (1) inconsistent with her deposition testimony, and (2) full of conclusory, self-serving and inadmissible statements. This motion to strike Jackson's affidavit is due to be denied for the following reasons. (1) Defendants provided the court with such small fragments of Jackson's deposition that it is not possible for the court to tell whether or not Jackson's affidavit is inconsistent with the deposition; (2) from what defendants did provide, the court has concluded that Jackson's affidavit, while expanding to some degree on her deposition, is not inconsistent with it. Surely defendants cannot claim to be surprised that Jackson alleges that Horsley threatened her unless she would "play the game." Their own brief demonstrates the contrary. In Jackson's deposition, reference is made to the "nineteen" harassing statements Jackson ascribes to Horsley. These "nineteen" statements are recounted in defendants' brief in support of the present motion. Horsley's demand that Jackson "play the game" is listed in defendants' brief as statement number nine on this list of nineteen; (3) the court finds that Jackson's affidavit describes matters of which she has personal knowledge, and is thus not conclusory or inadmissible.

17

This court is unwilling to conclude that the type of working conditions Jackson describes could not, as a matter of law, be deemed "intolerable" to a "reasonable person".  To quote the Middle District of Georgia in *Jones v. USA Petroleum,* after that court considered a similar fact situation:[8]

> The Court recognizes that a factual issue may exist as to whether plaintiffs' working conditions were intolerable. Perhaps such is for a jury to decide.

*Jones v. USA Petroleum Corp.*, 20 F.Supp.2d at 1384.

This court finds that genuine issues of fact exist as to whether Jackson faced intolerable conditions and was thus constructively discharged.  It follows, therefore, that she may be able to demonstrate the "tangible employment action" required to prove her *quid pro quo* sexual harassment claim.  Accordingly, defendants motion for summary judgment as to both the constructive discharge claim and the *quid pro quo* harassment claim is due to be denied.

---

[8] The fact situation the *Jones* court considered, which left that court unable to decide that the conditions Jones faced were tolerable as a matter of law, is as follows: "Brown used profanity . . . he made sexually suggestive comments (i.e., he asked her the color of her pubic hair, jokingly propositioned her, etc.) and sometimes rubbed up against her while they were together in the cashier's booth. . . . Jones also alleges that Brown forcibly kissed her in the bathroom of the station, causing her to become ill and faint later that day." *Jones v. USA Petroleum Corp.*, 20 F. Supp. 2d at 1383. The *Jones* court refused to conclude as a matter of law that such conditions could not possibly be "intolerable" to a "reasonable person."

**Retaliation**

A claim for retaliation requires a showing that (1) the plaintiff engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities. *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir.1997).

(1) Statutorily protected activity

Under Title VII, both "opposition" activities and "participation" activities constitute statutorily protected activities. The statute states that it is an unlawful employment practice for an employer to discriminate against an employee:

> because he has **opposed** any practice made an unlawful employment practice by this subchapter, **or** because he has made a charge, testified, assisted, or **participated** in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (emphasis added).

Here, because Jackson did not "participate" in any sort of investigation, she is apparently arguing that when she told Horsley to stop propositioning her, she was "opposing" a practice made unlawful by Title VII, and thus engaging in "statutorily protected activity." Several district courts have determined that refusal of sexual advances constitutes "opposition" to unlawful employment

19

practices under Title VII.  The court in *Fleming v. South Carolina Dept. of Corrections*, 952 F.Supp. 283 (D.S.C. 1996) recently listed these cases:

> *Armbruster v. Epstein*, 1996 WL 289991, at 3 (E.D.Pa. May 31, 1996) (court denied defendant's motion to dismiss finding that protected activity includes employee's refusal of sexual advances by employer); *Burrell v. City Univ. of New York*, 894 F.Supp. 750, 761 (S.D.N.Y.1995) (evidence supported finding that "the predominant reason for Burrell's termination was in retaliation either for filing her complaint ... or for refusing to accede to Roman's sexual advances, both activities protected under Title VII"); *Boyd v. James S. Hayes Living Health Care Agency, Inc.*, 671 F.Supp. 1155,1167 (W.D.Tenn.1987) (plaintiff engaged in protected activity by refusing her supervisor's sexual advances); *EEOC v. Domino's Pizza*, 909 F.Supp. 1529, 1533 (M.D.Fla.1995)(employee ordering supervisor from his office and threatening to file a report after she came on to him was protected activity).

*Fleming*, 952 F.Supp. at 288.

This court does not agree with the courts above and finds that Jackson, when she rejected Horsley's advances, was not engaged in "statutorily protected activity," and thereby did not satisfy element number one of the retaliation claim.  To hold otherwise would be to invite a conversion of the rebuff of every sexual advance into a retaliation claim, if after the rebuff plaintiff claims to have suffered any kind of an adverse employment action. Accordingly, defendants' motion for summary judgment as to Jackson's claim for retaliation is due to be granted.

**Invasion of Privacy**

In Alabama, there are four acts that constitute an invasion of privacy:

(1) the intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates the ordinary decencies; (3) putting the plaintiff in a false but not necessarily defamatory position in the public eye; and (4) the appropriation of some element of the plaintiff's personality for a commercial use."

*Phillips v. Smalley Maintenance Servs., Inc.*, 435 So.2d 705, 708 (Ala. 1983).

Allegations of sexual harassment are sufficient to state a claim of invasion of privacy in Alabama under the "intrusion upon seclusion" theory. *Id.* at 708-12. With respect to this claim of invasion of privacy, this court finds itself in a position similar to the court in *Kelley v. Troy State University,* 923 F.Supp. 1494 (M.D. Ala. 1996). The facts of *Kelley*, set forth in bold below, appear comparable to the facts here. The *Kelley* court found that it could not dismiss the claim as a matter of law:

In this case, the Plaintiff is proceeding under the "intrusion on seclusion" theory. Under this theory, "'there must be something in the nature of prying or intrusion' and 'the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to be, private.'" *Busby*, 551 So.2d at 323-24 (quoting Prosser & Keeton, The Law of Torts 855 (5th ed. 1984)). Significantly, the United States Supreme Court has specifically recognized that

21

"sexual" concerns are entitled to privacy protection.
*See, e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct.
1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut*, 381
U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *see also*
*Phillips v. Smalley Maintenance Servs.*, 435 So.2d 705,
708 (Ala.1983). In this case, the Plaintiff alleges facts
that she contends amount to an invasion of her privacy by
the Defendant Kimbrough. **These facts include making
sexually explicit remarks about women and making jokes at
the expense of women. Furthermore, the Plaintiff contends
that the Defendant made degrading personal comments to
her, such as saying that she was having "a blond attack"
when she made an error, and that he told her to "show a
little leg" when a male colleague was coming to the
office. She also claims that, on several occasions, the
Defendant Kimbrough struck her, either with an open hand
or a closed fist.** Although the court expresses some
doubt as to whether these facts are sufficient to sustain
a claim against the Defendant Kimbrough for invasion of
privacy, the court is unwilling to dismiss the claim for
failure to state a cause of action at this early stage of
the litigation.

*Kelley v. Troy State University,* 923 F.Supp. 1494, 1502-03 (M.D.
Ala. 1996).

Similarly, this court is unwilling to dismiss the claim against

Horsley on summary judgment.  To the extent that this claim is

brought against Horsley individually, defendant's motion for

summary judgment is due to be denied.

With respect to any claim against Dixie for invasion of

privacy, the Alabama Supreme Court has held that "sexual misconduct

by an employee is purely personal and outside the line and scope of

his employment." *Doe v. Swift*,  570 So.2d 1209, 1211 (Ala. 1990).

22

Thus, Dixie cannot be held vicariously liable under Alabama law for Horsley's alleged violation of the state law claim of invasion of privacy, because Horsley was not acting "in furtherance of the employer's interest." With respect to any direct liability, Dixie could only be held liable if it had actual or constructive knowledge of sexual harassment and failed to remedy the situation. *Portera v. Winn Dixie of Montgomery, Inc.*, 996 F.Supp. 1418, 1436 (M.D. Ala. 1998). Jackson claims only one instance when she allegedly told Jerry Limbaugh, Jr., the general manager, that a certain employee had quit because of sexual comments made by Horsley. Jackson acknowledges that she did not complain to Limbaugh any other time about Horsley's sexual harassment. This court finds that Jackson has failed to provide sufficient evidence of knowledge, or that the Dixie failed to take adequate steps to remedy the situation once it had knowledge. Accordingly, to the extent that Jackson claims liability on the part of Dixie for invasion of privacy, either directly or indirectly, defendants' motion for summary judgment is due to be granted.

### Negligent/Wanton Hiring, Training, Retention

In *Big B, Inc. v. Cottingham*, a case dealing with negligent and wanton hiring and training, the Alabama Supreme Court restated the standard for holding the employer liable for the acts of the

23

allegedly ill-trained/negligently-hired employee.

> [T]he master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.

*Big B, Inc. v. Cottingham*, 634 So.2d 999, 1003 (Ala. 1993).

As discussed above, Jackson only claims one time when Dixie's general manager was allegedly made aware of allegations of sexual harassment by Horsley.   This court finds that this does not constitute a sufficient showing by Jackson that Dixie had "knowledge" of Horsley's "unfitness." Accordingly, with respect to Jackson's claims of Dixie's negligent/wanton hiring and retention, summary judgment is due to be granted.


### Conclusion

Based on the reasons set forth above, defendants' motion for summary judgment is due to be granted in part and denied in part. An appropriate order will be separately entered.


DONE this *20th* day of January, 2000.

24

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE